## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Allina Health System,

      Plaintiff,

v.

Gentox Medical Services, LLC and Uriah Kennedy,

      Defendants.

Court File No.:

**COMPLAINT AND
JURY TRIAL DEMAND**

Plaintiff Allina Health System d/b/a Allina Health ("Allina") for its Complaint against Gentox Medical Services, LLC ("Gentox") and Uriah Kennedy, states and alleges as follows:

### NATURE OF THE ACTION

1. In early June 2020, during the period of the Covid-19 pandemic when personal protection equipment ("PPE"), including gloves, was scarce, Allina purchased 15 million nitrile medical gloves from Gentox, sending Gentox $945,000. Allina purchased the gloves based on Gentox's representation that it could provide "fast delivery" of the gloves, with the gloves to arrive in Minnesota during June and July 2020. But now – over 18 months later – Gentox has failed to deliver a single glove to Allina or to return Allina's money.

1

**PARTIES**

2.      Allina Health System is a Minnesota nonprofit corporation in the business of owning and operating clinics, hospitals, and other health care services in the state of Minnesota.  Allina's principal place of business is located in Minneapolis, Minnesota.

3.      Defendant Gentox Medical Services, LLC is a Pennsylvania corporation, with its principal place of business located at 1910 West 1040 South, Salt Lake City, UT 84104.

4.      Upon information and belief, Uriah Kennedy is the chief executive officer and "sole member" of Gentox.  Upon information and belief, he is a resident and citizen of Utah.

**JURISDICTION AND VENUE**

5.      This Court has subject-matter jurisdiction over this action pursuant to provisions of 28 U.S.C. § 1332 because the dispute is between citizens of different states. Plaintiff Allina is a Minnesota corporation, Defendant Gentox is a Pennsylvania corporation, Mr. Kennedy is a citizen of Utah, and the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over Gentox because it purposely directed its activities at Minnesota, created contacts with Minnesota, and purposefully availed itself of the privilege of conducting business in Minnesota.  Gentox entered into two purchase orders with Allina knowing that Allina's principal place of business was in Minnesota.  Gentox refused to make the contractually required delivery in Minnesota causing foreseeable injury to Allina in Minnesota.  The harm to Allina arises out of Gentox's fraudulent and deceptive practices directed at Allina in Minnesota.

7.      Additionally, Gentox has a Minnesota-based "Sales Specialist & Certified

Representative," and continues to seek to hire Minnesota-based representatives to sell its "suite of Personal Protective Equipment." Upon information and belief, in 2020 Gentox also solicited business from the Minnesota Division of Homeland Security and Emergency Management.

8.    Gentox represents itself as a "growing national device, laboratory, supplies and medical services company." It claims to have "coverage in all 50 states," and aims "to be the provider of choice in all 50 states."

9.    This Court has personal jurisdiction over Gentox CEO and "sole member" Uriah Kennedy because he purposely directed his (and Gentox's) activities at Minnesota, created contacts with Minnesota, and purposefully availed himself of the privilege of conducting business in Minnesota. His company entered into two purchase orders with Allina knowing that Allina's principal place of business was in Minnesota. His company refused to make the contractually required delivery in Minnesota causing foreseeable injury to Allina in Minnesota. The harm to Allina arises out of Mr. Kennedy's fraudulent and deceptive practices directed at Allina in Minnesota. His company has hired, and continues to seek to hire, Minnesota-based sales representatives, and touts itself as a "growing national device, laboratory, supplies and medical services company." It claims to have "coverage in all 50 states," and aims "to be the provider of choice in all 50 states." Upon information and belief, in 2020 his company also solicited business from the Minnesota Division of Homeland Security and Emergency Management.

10.    Additionally, personal jurisdiction is justified because Mr. Kennedy, by virtue

of his actions that require the piercing of the corporate veil (Count III below), has caused harm to Allina in Minnesota.

11.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claim occurred in Minnesota. Defendant Gentox initiated contact with Minnesota-based Allina to solicit Allina's business. Mr. Kennedy and Gentox knowingly conducted business in Minnesota, the at-issue purchase orders required Gentox to deliver the gloves to Allina's Minneapolis warehouse, and the harm to Allina arises out of Gentox's fraudulent and deceptive practices directed at Allina in Minnesota.

## FACTS COMMON TO THE CLAIMS

12.     In May and June 2020, Allina needed to purchase large quantities of medical gloves for its employees to use while caring for patients.  Given the high demand for medical services induced by the Covid-19 pandemic, personal protective equipment ("PPE") was in extremely high demand and temporary shortages were common.

13.     On May 14, 2020, a Gentox sales representative ("the representative") initiated contact with Allina, soliciting its business.  The representative called and then emailed Allina, ostensibly seeking to sell PPE, including gloves.  In his email, the representative noted in bold font that, "**we have PPE supplies and Covid-19 Testing materials available**."  Among the products listed in the email were nitrile gloves.  He promised "FAST DELIVERY."

14.     On May 28, 2020, the representative reiterated in an email that Gentox had nitrile gloves available, sent Allina a copy of Gentox's "most recent pricing catalog," that

4

included "specs, pics, certifications, and pricing," and noted that "Lead time is worst case 18-21 days."

15.     Gentox's solicitation of Allina continued throughout May 28, 2020.  First, the Gentox representative sent Allina more information on glove strength.  He then sent Allina the Gentox "quote" for five million gloves.  The quote document noted Allina's Minnesota address, payment terms (50% upfront, 50% on arrival) and the total price of $480,000.  The representative also sent Allina the Gentox W-9 form.

16.     On May 29, 2020, in response to Allina's specific inquiry as to whether glove delivery realistically could happen within 18-20 days, the Gentox representative responded that, "[w]e can get you a partial of your order on the double if you prefer to receive some ASAP.  The rest will be delivered within that window of 21 days.  Or we can deliver them all at once." He also requested that the Allina contract manager give him a call.

17.     Based on the Gentox representative's repeated assurances of delivery in June 2020, on June 1, 2020, Allina agreed to purchase five million gloves from Gentox.  Allina paid the required 50% up front ($240,000) on June 3, 2020.  Allina paid the remaining $240,000 for this order on August 19, 2020.

18.     On June 2, 2020, in response to an inquiry by Allina about the estimated time of arrival if Allina purchased more gloves, the Gentox representative responded that Gentox could deliver an additional ten million gloves, "grouped with [Allina's] previous order and have them delivered together." He even said that he would, "go to work behind the scenes to get it expedited."  The representative also indicated that, alternately if it suited Allina, Gentox

could stagger the delivery of the ten million gloves so they arrived (in Minnesota) in mid-July.

19.     On June 2, 2020, Allina asked Gentox when the first order of five million gloves would arrive at Allina.  The Gentox representative responded that he would, "call my logistics team now to get ETA on first arrivals." Later that day, the representative told Allina that, "it could be as early as the week of June 15 or possibly the week of June 21st.  We should have a firm date set on those within the coming days."  He then asked if Allina would like him to "draw up a PO for 10,000,000 Nitrile gloves?"

20.     In a later email on June 2, 2020, the Gentox representative said that the first order of five million gloves "will most likely be a partial shipment," with the rest to be staggered.  He also attached a quote for ten million nitrile gloves.

21.     On June 3, 2020, the Gentox representative sent an email to Allina stating, "I haven't received anything yet from your side.  DO you want me to send a PO to be signed?"

22.     On June 5, 2020, the Gentox representative sent an email to Allina stating, "I just wanted to touch base with you to see if there was any progress on the PPE order."  Later that day, he sent an email stating, "Here is the PO needing signing for the 10,000,000 gloves order."

23.     Based on the Gentox representative's representations that Gentox could deliver an additional ten million gloves in mid-July 2020, Allina placed its second order (ten million gloves) on June 5, 2020 and paid the required 50% upfront ($465,000) on June 8, 2020.

24.     Between the two purchases, Allina purchased 15 million gloves from Gentox,

at a total price of $1,410,000.  Both purchases required 50% to be paid up front, with the rest due on delivery of the gloves.  Allina made three payments totaling $945,000 (the total price for the first five million gloves and 50% upfront for the ten million gloves).

25.      Gentox did not deliver any gloves in June or July 2020.  Eighteen months later, Gentox has failed to deliver a single glove to Allina and has failed to return Allina's $945,000.

26.      Once it had received Allina's money, Gentox immediately began changing its story.  On June 11, 2020, the Gentox representative told Allina that the first order of five million gloves has, "completed production and is on the boat for delivery in LA county Port very soon.  I should have a precise tracking date for you by the end of the week.  Rough estimate [for arrival at Allina] is end of next week or early the following."

27.      Now in possession of Allina's money, and living a lavish lifestyle replete with helicopters, large boats, fifth wheel campers, snowmobiles, and all-terrain vehicles, defendant Uriah Kennedy began providing Allina with a series of excuses in response to Allina's inquiries about glove delivery or refund.  On June 11, 2020, Mr. Kennedy falsely claimed in an email to Allina, "Going by our record there is an outstanding payment owed by Allina health for Nitrile Exam Gloves.  Kindly let me know the amount owed and when payment will be made."

28.      On August 6, 2020, Gentox, in response to Allina's request to cancel the orders for 15 million gloves, said it is, "unable to cancel the order this far into the PO process.  The gloves are en route to be fulfilled."

29.      On August 26, 2020, Mr. Kennedy responded to Allina's request for an update

by saying:

> All the shipping and supply lines have cleared up from the shut down caused be fraudulent boxes being printed. (Don't know if you know that whole situation that happened in Vietnam with the government shutting everything down). We currently have everything on their way and product will be arriving starting on September 11th. I will get you tracking numbers as soon as product arrives state side.

30.    In late August 2020, via phone call with Allina, Mr. Kennedy said he would find an alternate buyer for the gloves.  He then simply began ignoring and not responding to Allina's September 2020 requests for an update.

31.    In November 2020, Mr. Kennedy told Allina that the "[f]irst container arriving between 2nd and 9th of December."

32.    On December 14, 2020, Mr. Kennedy sent Allina a long email in which he blamed Gentox's failure to deliver gloves on, among other things, "numbers of complications, delays and extensive amounts of fraud," "shortages of gloves across the country and a lot of sub-par inventory," "past issues in Vietnam and the reasons why [Gentox] had to abandon all Vietnamese manufacturing," "increasing prices," "a severe shortage of containers in the orient and container ships not wanting to return with a vessel full of empty containers," and a strain on shipping due to "Christmas production."  But he claimed, "[w]e have been able to work through most of our production issues and have a large number of gloves on their way" and "[c]lients that have given deposits will receive their gloves first."  He claimed that Gentox has, "orders in excess of 15 Million boxes of gloves and increasing daily," and that "[o]ur production orders will start hitting the states the last week of December and on into January."  He even claimed that, "[o]ne of these containers arrived this last Sunday."  But of course

8

Gentox could not deliver these stateside gloves because two other companies, "informed us that they are taking the container." Similarly, he claimed, "3 times before . . . product was sold out from under us . . . by the factory or foreign company." But Mr. Kennedy noted that Gentox had contacted the (non-existent) "US Department of Foreign Commerce."

33.    In a later email that day, Mr. Kennedy stated, "we are trying to have [the Allina order] all solved and hear (sic) by the end of this month or latest mid-January [2021]."

34.    The gloves did not arrive in January 2021. On February 9, 2021, in response to Allina's inquiry, Mr. Kennedy claimed, "[w]e have just signed major contracts" and "should have the final info in a week or so." He claimed the, "major production order will be over 20 Million boxes of gloves and is requiring a lot of work and a lot of logistics but moving along well right now." He was "thinking" Gentox would have the gloves in "4 to 6 weeks."

35.    In March 2021, Allina reiterated its demand to cancel the orders and get a refund. Mr. Kennedy ignored all these requests. On March 30, 2021, he sent an email saying, "We are hoping to have shipping news on the 8th." He ignored Allina's subsequent requests for a phone conference.

36.    Mr. Kennedy continued to ignore Allina's requests for a refund. On May 26, 2021, he claimed the money sent by Allina (among others) was, "used to acquire gloves and are sent to Malaysia and Thailand" and "[t]hese funds do not sit in a US bank account somewhere free to issue refunds."

37.    On June 2, 2021, Mr. Kennedy offered to sell Allina nitrile gloves at prices well-above the 2020 agreed upon prices, stating, "[t]his is your best bet and (sic) getting

gloves or money."

38.    On August 4, 2021, Allina's legal department sent Mr. Kennedy a final demand letter which stated that "[i]f Allina does not receive a full repayment of $945,000 on or before August 16, 2021 [Allina] will pursue all legal remedies available to us."  Mr. Kennedy never responded.

39.    Upon information and belief, Gentox and Mr. Kennedy entered into the Purchase Agreements without any intention of providing the gloves to Allina.

40.    Mr. Kennedy's history indicates the failure to deliver gloves and refusal to refund Allina's money was not due to accident or mistake.  But rather that Mr. Kennedy saw the Covid-19 pandemic as an opportunity to make money and had the knowledge to plan and prepare a scheme.

41.    In 2009, Mr. Kennedy was indicted on, and in 2012 pled guilty to, charges arising from a scheme to fraudulently obtain an $18 million commercial loan and the use of that money, in part, for personal expenses.  Kennedy knowingly submitted material false statements to Arkansas National Bank regarding a loan application.  *United States v. Uriah A. Kennedy and Gregory Lee Hansen*, No. 2:09-cr-0095 (D. Utah).  In addition to prison time, Mr. Kennedy was ordered to pay restitution of $7 million.

42.    In a case arising out of a 2012 financial transaction in which the plaintiff alleged Mr. Kennedy defrauded him, the district court entered judgment against Mr. Kennedy. The plaintiff pledged real property as collateral for a loan to another entity in the amount of $445,401.  Mr. Kennedy promised plaintiff various monies in exchange for his pledge of the

collateral.  According to the Utah Court of Appeals, "[t]he purported purpose of the loan was to fund the acquisition of a company called Seaich Corporation."  Plaintiff never received the promised monies.  *Pyper v. Reil,* 437 P.3d 493, 495 (Ut. Ct. App. 2018) (discussing the underlying case in Utah's Third District Court, Salt Lake Department, Case No. 130906816).  Upon information and belief, Seaich Card & Souvenir Corporation is located at the same address as Gentox, 1910 West 1040 South, Salt Lake City, UT 84104 and Mr. Kennedy is its Director.

43.     Additionally, upon information and belief, Mr. Kennedy has filed for bankruptcy three times and been held liable for at least 10 other civil or small claims judgments since 2003.

44.     Similarly, Gentox has recently been sued by multiple plaintiffs alleging fraudulent behavior and/or contract breach involving PPE during the Covid pandemic.  In Illinois federal court, a nursing home operator alleges Gentox breached a June 2020 contract to timely deliver $308,360 worth of examination gloves during the height of the pandemic (*Royal Management Corporation v. Gentox,* 1:21-cv-03655 N.D. Ill.).

45.     In Pennsylvania federal court, a manufacturer of N-95 face masks has accused Gentox of selling counterfeit versions of its products (*AOK Tooling Ltd. et al v. Gentox*, 2:20-cv-03627, E.D. Pa.).  According to the Complaint, in April 2020, the plaintiffs were alerted by an employee of the Minnesota Division of Homeland Security and Emergency Management ("HSEM") "that HSEM had received communications from [Gentox] who claimed it had a shipment of a significant number of Plaintiffs' AOK N-95 Masks for resale

in commerce in the United States and intended to solicit HSEM's business for profit." Dkt. 1, ¶26. This further indicates Gentox was actively soliciting business in Minnesota in 2020.

46. In Utah federal court, a plaintiff alleges Gentox agreed to purchase medical gowns and N-95 respirators, the goods were shipped to Gentox, but Gentox has failed to pay over $6 million (*Bontex International Ltd. v. Gentox*, 2:21-cv-00373-DBP, D. Utah).

47. Upon information and belief, Gentox is the alter ego of Uriah Kennedy, is merely a façade for his individual dealings, and that the separate personalities of the corporate entity and the individual defendant no longer exist. Upon information and belief, Uriah Kennedy and Gentox are engaged in the following activities rendering the alter ego doctrine applicable:

(1) Insufficient capitalization of Gentox,

(2) Failure to observe corporate formalities,

(3) Nonpayment of dividends,

(4) Insolvency of debtor corporation,

(5) Siphoning of funds by dominant shareholder,

(6) Nonfunctioning of other officers and directors,

(7) Absence of corporate records, and

(8) Use of the corporation as a facade for individual dealings.

## COUNT I: BREACH OF CONTRACT

48. Allina realleges the previous paragraphs as if fully stated herein.

49.     Defendant Gentox entered into two binding contracts with Allina, agreeing to provide Allina with 15 million gloves at an agreed upon price.

50.     Allina complied with and exceeded its contractual obligations, paying $945,000 to Gentox.

51.     Defendant Gentox materially breached its obligations under the contracts with Allina by failing to deliver any gloves or refund Allina's money.

52.     As a direct and proximate cause of Gentox's breach of contract, Allina sustained damages of at least $945,000.

### COUNT II: FRAUDULENT MISREPRESENTATION

53.     Allina realleges the previous paragraphs as if fully stated herein.

54.     Gentox and Mr. Kennedy knowingly made false representations of material fact and concealed material facts, intending to induce Allina to act.

55.     Allina did act in reliance upon Defendants' representations and omissions, entering the contracts described above and sending $945,000 to Gentox.

56.     As a direct and proximate result of Defendants' representations and omissions of material fact, Allina was damaged in an amount no less than $945,000.

57.     As set forth with more particularity above in the section "Facts Common to the Claims," among the false statements and omissions made by Gentox and/or Mr. Kennedy:

    a.  Gentox had gloves "available" for "fast delivery."

    b.  "Lead time is worst case 18-21 days."

13

c.  That Gentox could and would deliver 15 million gloves and that it could do so during June and July 2020.

d.  That Gentox would honor the agreed-upon price.

e.  That Gentox was "unable to cancel the order this far into the PO process [because] the gloves are en route to be fulfilled."

f.  Defendants failed to inform Allina that Gentox had no gloves available.

g.  Defendants failed to inform Allina that neither Gentox or Mr. Kennedy had any intention of providing the gloves.

h.  Defendants failed to inform Allina that Defendants were repeatedly lying about the status of the gloves.

i.  Defendants failed to inform Allina that Gentox and Kennedy would use Allina's money for their own purposes and benefit.

### COUNT III: PIERCE THE CORPORATE VEIL

58.  Allina realleges the previous paragraphs as if fully stated herein.

59.  Gentox has been operated as a constructive fraud.  Upon information and belief, there is a unity of interest and ownership between Gentox and Mr. Kennedy.  Mr. Kennedy is the governing and dominating personality of Gentox.

60.  There is sufficient unity of interest and ownership in Gentox to satisfy piercing the corporate veil and holding Mr. Kennedy jointly and severally liable for the claims against Gentox set forth herein.

14

61. Otherwise, an inequitable result would follow because Gentox and Mr. Kennedy have obtained and failed to return $945,000 of Allina's money based on materially false representations.

## COUNT IV: VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT

62. Allina realleges the previous paragraphs as if fully stated herein.

63. Defendants violated the Minnesota Consumer Fraud Act (MCFA), Minn. Stat. § 325F.68 et seq. As described above, Gentox and Mr. Kennedy used fraud, false pretense, false promise, misrepresentation, misleading statements and/or deceptive practices, with the intent that Allina rely thereon, in connection with the sale of nitrile medical gloves. Allina was misled and deceived and damaged thereby, as Defendants sought and received $945,000 from Allina, but provided no gloves.

64. Nitrile exam gloves are goods that qualify as merchandise.

65. This cause of action can be pursued under Minn. Stat. § 8.31, subd. 3a, "the Private Attorney General Statute," because this cause of action benefits the public, is consistent with the purpose of the office of the Minnesota Attorney General to prosecute misrepresentations involving matters of public interest, and a successful prosecution of this claim will advance state interests.

66. Allina's doctors, nurses and staff work every day to care for Minnesotans that have Covid-19. To do so, these people, along with all the other healthcare providers in Minnesota, must have proper PPE, including gloves. The state has an over-riding interest in

15

the health of its citizenry and the protection of its healthcare workers.  Thus, the state has an over-riding interest in ensuring that the PPE market is not overrun with fraud.

67.     As noted above in ¶ 45, Gentox allegedly tried to sell counterfeit N-95 face masks to the Minnesota Division of Homeland Security and Emergency Management in 2020. This fraudulent behavior is squarely within the Minnesota Attorney General's purpose to prosecute misrepresentations involving matters of public interest.

68.     Under the MCFA, Allina is eligible to recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the Court.

## COUNT V: CIVIL LIABILITY FOR THEFT

69.     Allina realleges the previous paragraphs as if fully stated herein.

70.     Defendants Gentox and Mr. Kennedy have committed Civil Theft as set forth in Minn. Stat. § 604.14.

71.     Gentox and Mr. Kennedy stole personal property from Allina in the amount of $945,000.  As such, Gentox and Mr. Kennedy are civilly liable to Allina for $945,000 plus punitive damages of up to an additional $945,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Allina prays for judgment in its favor against Defendants Gentox Medical Services, LLC and Uriah Kennedy, as follows:

1.     For an Order awarding Allina judgment against Gentox and Mr. Kennedy for no less than $945,000, exclusive of interest and costs.

16

2.      For an Order awarding Allina judgment against Gentox and Mr. Kennedy for additional punitive damages of no less than $945,000.

3.      For an Order awarding Allina pre- and post-judgment interest on all amounts awarded as well as reasonable costs and disbursements, including costs of investigation and reasonable attorney's fees.

4.      For an Order prohibiting any fraudulent financial transfers to the extent necessary to satisfy Allina's claims.

5.      For such other and further relief as the Court deems just and equitable.

**ALLINA DEMANDS A JURY TRIAL ON ALL ISSUES HEREIN.**

Dated:  January 11, 2022                    SOULE & STULL LLC

By: *s/ Kevin P. Curry*
Melissa R. Stull (#0387060)
Kevin P. Curry (#0285067)
Eight West 43rd Street
Suite 200
Minneapolis, MN 55409
Telephone: (612) 353-6403
mstull@soulestull.com
kcurry@soulestull.com

**ATTORNEYS FOR ALLINA
HEALTH SYSTEM**

17