UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ALLINA HEALTH SYSTEM, | Case No. 22-CV-63 (NEB/JFD) |
| Plaintiff, | |
| v. | ORDER |
| GENTOX MEDICAL SERVICES, LLC and URIAH KENNEDY | |
| Defendants. | |

This case is before the Court to address an issue involving medical gloves that Plaintiff Allina Health System purchased from Defendant Gentox Medical Services, LLC. Allina alleges that during the COVID-19 pandemic, it bought 15 million pairs of gloves for nearly a million dollars from Gentox. Eighteen months later, Allina has yet to receive the gloves. Allina sues Gentox for breach of contract and Gentox and Kennedy for fraud and theft. Allina also asks the Court to pierce Gentox's corporate veil to find Kennedy liable for the claims against Gentox. Gentox and Kennedy now move to transfer venue to Utah, or in alternative, to dismiss for lack of personal jurisdiction. For the reasons below, the Court denies Defendants' motion.

## BACKGROUND[1]

I. **Glove Purchase**

Gentox is a "growing national device, laboratory, supplies and medical services company" that sold personal protective equipment ("PPE") during the COVID-19 pandemic. (ECF No. 1 ("Compl.") ¶¶ 7–8.) Gentox is a limited liability company whose sole member is Uriah Kennedy, a Utah citizen. (*Id.* ¶¶ 3–4.)

In May 2020, a Gentox sales representative contacted Allina[2] offering to sell PPE, including nitrile gloves, with fast delivery. (*Id.* ¶ 13.) The representative quoted a price for 5 million gloves, noting Allina's Minnesota address and assuring Allina it would receive the gloves within the 18–21 days. (*Id.* ¶¶ 14–16.) Based on these representations, Allina bought 5 million gloves from Gentox in June 2020 and 10 million more gloves a few days later. (*Id.* ¶¶ 17, 23.) It paid the required 50% upfront cost for the orders. (*Id.*) After these payments, Allina alleges that Kennedy emailed Allina and falsely claimed that Allina had not made the required payments. (*Id.* ¶ 27.) Allina paid the remaining balance for the first order in August 2020. (*Id.* ¶ 17.)

In the months following the glove orders, Gentox assured Allina that the gloves would be delivered—even as the delivery became increasingly more delayed. (*Id.* ¶¶ 26,

---

[1] The Court accepts the factual allegations in Allina's complaint as true, as it must on a motion to dismiss. *Aten v. Scottsdale Ins.*, 511 F.3d 818, 820 (8th Cir. 2008).

[2] Allina is a Minnesota nonprofit corporation. (Compl. ¶ 2.)

2

28.) When Allina tried to cancel the orders, Gentox refused, again assuring Allina that the gloves were "en route to be fulfilled." (*Id.* ¶ 28.) At various times, Kennedy emailed Allina excuses, each time assuring Allina that the deliveries would arrive soon. (*Id.* ¶¶ 29–37.) The gloves did not arrive. At one point, Kennedy "noted that Gentox had contacted the (non-existent) 'US Department of Foreign Commerce'" about the delivery issues and again promised the gloves would arrive soon. (*Id*. ¶¶ 32–33.)

Spring 2021 communication between Allina and Kennedy continued similarly. Kennedy claimed that there were issues with Allina's order but that they had been cleared and the shipment would be arriving soon. (*Id.* ¶¶ 33–34.) And when the shipments did not arrive, Kennedy ignored Allina's request for a refund. (*Id.* ¶ 35.) In June 2021, Kennedy "offered to sell Allina nitrile gloves at prices well-above the 2020 agreed upon prices, stating, '[t]his is your best bet and (sic) getting gloves or money.'" (*Id.* ¶ 37.) After over eighteen months, Allina has not received the gloves and has not been refunded. (*Id.* ¶ 1.)

Allina alleges that Gentox and Kennedy "entered into the Purchase Agreements without any intention of providing the gloves to Allina." (*Id.* ¶ 39.) Part of Allina's argument is that Kennedy's "history" shows his fraudulent intent.[3] (*Id.* ¶ 40.) Allina also

---

[3] Allina provides information about Kennedy's history of bankruptcies, civil fraud and contract breach cases, and criminal fraud cases. (Compl. ¶¶ 41–44.)

3

notes that there are various similar suits against Gentox involving PPE sales during the COVID-19 pandemic.[4] (*Id.* ¶¶ 45–46.)

## II.     Procedural History

Allina sues Gentox and Kennedy for fraudulent misrepresentation, violations of the Minnesota Consumer Fraud Act, and theft. (*Id.* ¶¶ 53–57, 62–71.) Allina also sues Gentox for breach of contract. (*Id.* ¶¶ 48–52.) Allina seeks actual and punitive damages, costs, and an injunction against "any fraudulent financial transfers to the extent necessary to satisfy Allina's claims." (*Id.* at 16–17.) And Allina asks the Court to pierce Gentox's corporate veil because "Gentox has been operated as a constructive fraud." (*Id.* ¶ 59.) Gentox and Kennedy move to transfer venue or, in the alternative, to dismiss Allina's claims against Kennedy for lack of personal jurisdiction. (ECF No. 17.)

---

[4] Allina also alleges that Kennedy is the alter ego of Gentox arguing that Kennedy uses Gentox as "merely a façade for his individual dealings and that the separate personalities of the corporate entity and the individual defendant no longer exist." (Compl. ¶ 47.) Allina believes "Kennedy and Gentox are engaged in the following activities rendering the alter ego doctrine applicable: (1) Insufficient capitalization of Gentox"; (2) "Failure to observe corporate formalities"; (3) "Nonpayment of dividends"; (4) "Insolvency of debtor corporation"; (5) "Siphoning of funds by dominant shareholder"; (6) "Nonfunctioning of other officers and directors"; (7) "Absence of corporate records"; and (8) "Use of the corporation as a facade for individual dealings." (*Id.*)

## ANAYSIS

### I.   Personal Jurisdiction

Gentox and Kennedy move to dismiss Allina's claims against Kennedy for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To survive a Rule 12(b)(2) motion, Allina must make a prima facie showing that personal jurisdiction exists "by pleading sufficient facts to support a reasonable inference that [Kennedy] can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (quotation marks and citation omitted). The Court properly asserts jurisdiction over a nonresident defendant if personal jurisdiction exists under the forum state's long-arm statute, and the exercise of personal jurisdiction is consistent with due process. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). Because Minnesota's long-arm statute permits the Court to exercise personal jurisdiction to the full extent of the Due Process Clause, the only question is whether exercising personal jurisdiction over Defendants offends due process. *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020).

At issue is whether the Court has specific jurisdiction over Kennedy.[5] Due process requires that Kennedy had "minimum contacts" in Minnesota such that exercising jurisdiction over him does not offend "traditional notions of fair play and substantial justice." *Wells Dairy*, 607 F.3d at 518 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444

---

[5] Allina does not argue that the Court has general jurisdiction over Kennedy, nor could it, because Kennedy is not domiciled in Minnesota. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

5

U.S. 286, 291–92 (1980)). The Eighth Circuit uses a five-factor test to analyze whether a court can exercise jurisdiction over a nonresident defendant:

> (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties.

*Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021) (citation omitted). Of these, the first three are afforded greater weight. *Id*. at 620.

Because Allina's claims against Kennedy are intentional torts (fraud and theft), the Court uses the "effects test" when analyzing Kennedy's contacts with Minnesota. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."). Under the effects test, "personal jurisdiction can exist over a nonresident defendant who commits an intentional tort when its effect is felt primarily within the forum state." *Rutledge*, 9 F.4th at 620 (citing *Pederson*, 951 F.3d at 981). The "proper question . . . is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. (citation omitted).

*Kennedy's contacts.* Allina's claims against Kennedy are for fraudulent misrepresentation, violation of the Minnesota Consumer Fraud Act, and theft. Defendants do not dispute the communications between Kennedy and Allina that spanned over fourteen months or Kennedy's allegedly false statements. Instead,

6

Defendants maintain that because Kennedy did not negotiate with Allina for the actual sales of the 15 million gloves, there is no personal jurisdiction.

Looking to the effects test, Kennedy's alleged torts were "felt primarily within" Minnesota. *Rutledge*, 9 F.4th at 620 (citation omitted). And Allina pled sufficient facts in its fraud and theft allegations to establish Kennedy had the necessary minimum contacts with Minnesota to establish personal jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 789–91 (1984) (explaining the effects test).[6] Kennedy's contacts with Minnesota were not "random, fortuitous, or attenuated but rather were central to an alleged scheme to purposely avail himself of the privilege of conducting activities" in Minnesota. *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (cleaned up). Kennedy was aware that Allina entered into a purchase agreement with Gentox and, to further the transaction, he allegedly committed fraud on numerous occasions over an extended amount of time.

---

[6] As to the fraud claim, in Minnesota, "a representation is made with fraudulent intent when it is known to be false or, in the alternative, when it is asserted as of the representer's own knowledge when he or she does not in fact know whether it is true or false." *Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986). As to the theft claim, a person can be civilly liable for theft for stealing property from the owner of that property. Minn. Stat. § 604.14, subd. 1. "Stealing" under Minnesota law means "transferring, concealing, or retaining property 'intentionally and without claim of right . . . with intent to deprive the owner permanently of possession." *Sorenson v. Sorenson*, No. 20-cv-2121 (MJD/DTS), 2022 WL 329678, at *7 (D. Minn. Feb. 3, 2022) (citing Minn. Stat. § 609.52, subd. 2(1)), *appeal filed* (No. 22-1478).

The Court's jurisdiction over Gentox stems from its business relationship with Allina. Minn. Stat. § 543.19 subd. 1(2). And although the Court's jurisdiction over Gentox does not automatically extend to Kennedy, the business relationship formed the basis for Kennedy's alleged fraud. If true, Kennedy's fraud would not have targeted Allina randomly but because of Allina's business relationship with Gentox—a business relationship formed in Minnesota.[7]

As for the remaining factors, "Minnesota has an obvious interest in providing a forum since Minnesotans were defrauded." *Kopperud v. Agers*, 312 N.W.2d 443, 445 (Minn. 1981). Kennedy's alleged fraud and theft enabled him to reap benefits from business done in Minnesota. And because the balance in favor of jurisdiction outweighs any resulting inconvenience of this forum, exercising jurisdiction does not violate traditional notions of fair play and substantial justice.[8] Defendants' motion to dismiss for lack of personal

---

[7] Citing *Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 96 (D. Del. 2002), Defendants argue that "post-transaction contacts generally do not support an exercise of personal jurisdiction related to the contract itself." (ECF No. 13 at 8.) Defendants misstate the law. *Tracinda* explained that post-transaction contacts support personal jurisdiction when the contacts were part of the scheme at issue. 197 F. Supp. 2d at 96.

[8] Kennedy maintains that because he could not have "foreseen being haled into a Minnesota Court" this Court cannot have jurisdiction over him. (ECF No. 13 at 7.) As alleged, Kennedy's contacts with Minnesota are sufficient to establish foreseeability. *Kopperud*, 312 N.W.2d at 445 ("This is not a case of an isolated or unforeseeable contact with Minnesota. [The Defendant] purposefully availed himself of this state to carry out a scheme to defraud investors. Although his direct contacts with this state were limited, he was instrumental in setting in motion the fraudulent scheme and in keeping it going.").

jurisdiction is denied.[9]

## II. Transferring Venue

Defendants seek to transfer this case to Utah, arguing it is a more convenient forum. A district court may transfer a case to another district for the convenience of parties and witnesses when the case could have been brought in the transferee court. 28 U.S.C. § 1404(a). When determining whether to transfer a case, the Court must consider "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Motions to transfer venue under Section 1404(a) "should not be freely granted, as federal courts give considerable deference to a plaintiff's choice of forum." *ProMove, Inc. v. Siepman*, 355 F. Supp. 3d 816, 824 (D. Minn. 2019) (quotation marks and citation omitted). The party seeking a transfer of venue faces a heavy burden—it must show that the factors strongly favor transfer. *Id*.

*Convenience of the parties.* Defendants assert that it is more convenient to litigate this case in their home jurisdiction of Utah. Because Allina is based in Minnesota, litigating in Utah would be equally burdensome for Allina. Defendants have not shown that the convenience to the parties favors transfer.

---

[9] Allina also argues that the Court can pierce Gentox's corporate veil to exercise personal jurisdiction over Kennedy. Because the Court finds it has jurisdiction over Kennedy because of his own contacts, it need not reach this alternate argument.

9

*Convenience of the witnesses.* Defendants contend that the "plurality of witnesses in this case will likely come from Utah" because Allina's "allegations will turn on the internal operations within Gentox." (ECF No. 13 at 13.) Despite their assertion, Defendants fail to name any of these witnesses. Defendants have not shown that the convenience to their witnesses favors transfer, especially because Allina's witnesses, documents and attorneys are located in Minnesota. (ECF No. 21 at 20.)

*Interest of justice.* Defendants argues that because the Court does not have personal jurisdiction over Kennedy, the interest of judicial economy and fairness support transfer. Because the Court has found it has personal jurisdiction over Kennedy, Defendants need not worry about potential parallel claims and the inconsistent results that would follow.

The Court denies Defendants' motion to transfer venue.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, the motion to dismiss or transfer venue (ECF No. 17) is DENIED.

Dated: August 24, 2022                 BY THE COURT:

                                             s/Nancy E. Brasel
                                             Nancy E. Brasel
                                             United States District Judge